<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————
                                                    )
FORDLEY D. SMALL,                                   )
                                                    )
                    Plaintiff,                      )
                                                    )         Civil Action No. 08-3458 (GEB)
            v.                                      )
                                                    )         **MEMORANDUM OPINION**
KS ENGINEERS PC,                                    )
                                                    )
                    Defendant.                      )
—————————————————————)

<u>**BROWN, Chief Judge**</u>

This matter comes before the Court upon the motion for summary judgment filed by

Defendant KS Engineers PC ("Defendant").  (Doc No. 22-6.)  The Court has reviewed the

parties' submissions and decided the motion without oral argument pursuant to Federal Rule of

Civil Procedure 78.  For the reasons that follow, the Court will grant Defendant's motion for

summary judgment.


I.        **BACKGROUND**

Plaintiff was employed as a surveying instrument operator by KS Engineers located in

Newark, New Jersey from May 22, 2006 through February 2, 2007.  (Def.'s Br. 1; Doc No. 22-6.)

In this position, Plaintiff used surveying instruments at outdoor construction sites as part of a

two-person team comprised of an Instrument Operator (the position held by Plaintiff) and a crew

chief (the position held by Ron Langevine).  (*Id.* at 2.)  Survey manager, Robert Ryan, supervised

these teams.  (*Id.*)

Plaintiff contends that he was sexually harassed by several coworkers.  (Pl.'s Resp. ¶ 10; Doc. No. 26.)  This "conspiracy" included numerous incidents with Mr. Langevine and a transgender coworker G.P.[1] and was aimed, according the Plaintiff, at pressuring him to become homosexual.  (*Id.* at ¶ 11.)  First, Plaintiff states that Mr. Langevine said "this bitch" within earshot of Plaintiff and that he came to the conclusion that Mr. Langevine was referring to him. (*Id.* at ¶ 11a.)  Second, Plaintiff states that Mr. Langevine touched his shoulder and hand in a sexual manner on several occasions over a five to six month period.  (*Id.* at  ¶ 11b.)  Plaintiff also states that coworkers sang rap songs to him in a derogatory manner and spoke to him in a way that suggested Plaintiff should become gay.  (*Id.* at ¶¶ 11c, 11d, 11e, 11f, 11h.)  Last, he states that G.P. leaned her body against his hand in an inappropriate way while reaching for a tool.  (*Id.* at ¶ 11g.)  In response to these events, Plaintiff left anti-homosexual fliers in the van that he and Mr. Langevine shared so as to "let Mr. Langevine know just where [he stood] on certain issues." (*Id.* at 6–8.)

Plaintiff states that the immediate event that lead to his termination was a dispute with Mr. Langevine in which the latter said "this bitch" while in the presence of Plaintiff.  (*Id.* at ¶ 12.)  Plaintiff assumed he was the subject of the comment; and he later confronted Mr. Langevine and told him that "there's no wonder, that's why G.P. said you're cool."  (*Id.*)  Mr. Langevine replied that he did not care and Plaintiff took this indifference to mean that Mr. Langevine was confirming that Plaintiff had a sexual relation with G.P.  (*Id.*)  The following

---

[1] Initials represent the identity of a female coworker with whom Plaintiff interacted. Because she is not named as a party to this case, the Court will refer to her as "G.P." throughout this memorandum opinion.

2

Monday, February 2, 2007, Plaintiff was called into Mr. Ryan's office and told that his

employment was terminated.  (*Id.* at ¶ 15.)  Plaintiff states that there was no way to report these

incidents to Mr. Ryan before or after that time.  (*Id.* at ¶¶ 12, 15.)  Defendant states that Plaintiff

was fired for harassing G.P. because she is transgender; yelling, screaming and cursing at

coworkers; and for exceptionally loud, inappropriate singing during work.  (Def.'s Br. at 6; Doc.

No. 22-6.)  Plaintiff also admits to having substance "addiction problems" (he states he never

used illegal drugs while on company time) although, as he acknowledges, the company handbook

contains policies against drug use and harassment.  (Pl.'s Resp. ¶¶ 14, 16; Doc. No. 26.)

Plaintiff, in a complaint filed on July 9, 2008, contends that he was a victim of sexual

harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964.  (Doc. No. 1.)

Defendant filed a motion for summary judgment on October 15, 2009.  (Doc. No. 22-6.)  Plaintiff

filed a response in opposition to the motion for summary judgment on November 10, 2009.

(Doc. No. 25.)

## II.    DISCUSSION

### A.    Standard

A party seeking summary judgment must "show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co.*,

789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine

factual issues that properly can be resolved only by a finder of fact because they may reasonably

be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)

(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving

party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

In the present case, Plaintiff appears *pro se*.  As such, the Court must apply a more liberal standard of review to Plaintiff's claims.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972);  *see also United States ex. rel Montgomery v. Brierley*, 414 F.2d 552 (3d Cir. 1969) (stating that *pro se* petitions should be liberally construed); *Wade v. Yeager*, 377 F.2d 841, 846 (3d Cir. 1967) (recognizing that a petition made without the benefit of counsel must be read with a measure of tolerance).

### B.      Analysis

#### 1.      *Harassment Claim*

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin . . . ."  42 U.S.C. § 2000e-2(a)(1).  The statute permits individuals to bring claims where they are forced "to work in a discriminatorily hostile or abusive environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  "The statutory basis for these claims is the notion that discriminatory ridicule or abuse can so infect a workplace that it alters the terms or conditions of the plaintiff's employment." *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006).

To succeed on a claim based on a hostile work environment, a plaintiff must prove that:

4

(1) the employee suffered intentional discrimination because of his sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) respondeat superior liability exists. *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001) (citations omitted); *Kunin v. Sears Roebuck and Co.*, 175 F.3d 289, 293 (3d Cir. 1999); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1304 n.19 (3d Cir. 1997) (citations omitted).

The plaintiff must also show that the harassment "[is] so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive environment." *Weston*, 251 F.3d at 426. *See also Harris*, 510 U.S. at 21 ("[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment . . . is beyond Title VII's purview."). Factors that the court should consider include the following: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Jensen*, 435 F.3d at 451 (citing *Harris*, 510 U.S. at 23). "Title VII is not 'a general civility code for the American workplace.'" *Jensen*, 435 F.3d at 449 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotations omitted). *See also Robinson*, 120 F.3d at 1297 ("not every insult, slight, or unpleasantness gives rise to a valid Title VII claim").

Here, Plaintiff cannot demonstrate sexual harassment because the undisputed facts do not rise to the level of creating an objectively hostile or abusive work environment. Plaintiff has not

shown that, even drawing all inferences in his favor, a reasonable factfinder could conclude that

he was the subject of intentional harassment that would be objectively considered severe,

pervasive, or a detriment to workplace performance.  Plaintiff has not demonstrated any genuine

factual dispute that the conduct alleged was intentionally discriminatory or that the conduct

complained of was pervasive and regular.  Plaintiff merely subjectively concludes that: (1) Mr.

Langevine's occasional alleged comments in his presence were both directed towards him and

meant to make him become homosexual and; (2) that occasional alleged physical occasional

touches by his coworkers while on the job were intentionally discriminatory or harassing.  Even

if assuming a factfinder could consider the incidents in question sexual in nature, one incident

with G.P. and several incidents over five to six months with Mr. Langevine cannot be reasonably

considered either pervasive or a hindrance work performance.  Furthermore, according to

Plaintiff, the incidents in question were comprised of nothing more than "touching" or "leaning

against" Plaintiff's shoulder or hands.  While perhaps unpleasant, this conduct does not give rise

to a Title VII claim.  Finally, the singing of derogatory songs in Plaintiff's presence, while

possibly offensive, is not objectively hostile so as to amount to being a physical threat,

humiliation, or detriment to work performance.  "Not every insult, slight, or unpleasantness gives

rise to a valid Title VII claim." *Robinson*, 120 F.3d at 1297.  In sum, Plaintiff plainly seeks relief

from alleged occasional objectionable behavior that no reasonable factfinder could conclude rise

above the type of simple teasing, offhand comments, and isolated incidents, which are not

protected by Title VII. *See Faragher*, 524 U.S. 775, 788.  Therefore, the Court will grant

summary judgment to Defendant as to Plaintiff's harassment claim.

> 2. *Retaliation Claim*

Title VII makes it an unlawful employment practice "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title . . . ." 42 U.S.C. § 2000e-3(a)(1). Retaliation claims, are analyzed under the three-step, burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d. Cir. 1997).

First, to establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in a protected employee activity; (2) his employer took adverse employment action; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. *Shellenberger v. Summit Bancorp*, 318 F.3d 183, 187 (3d Cir. 2003) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). Second, if the plaintiff establishes these three elements, the burden shifts to the defendant-employer to advance a legitimate, non-retaliatory reason for the adverse employment action. *Id.* Third, if the employer advances such a reason, the burden shifts back to the plaintiff to prove that "retaliatory animus played a role in the employer's decision-making process and that it had a determinative effect on the outcome of that process." *Id.*

Here, there is no indication that Plaintiff was a victim of unlawful retaliation. The undisputed facts do not anywhere suggest that Plaintiff was engaging in a protected activity. The facts only show that Plaintiff was present during some off-color or uncomfortable remarks and actions by his co-workers on various occasions. This is not activity protected by Title VII. Nor does Plaintiff contend that his supervisor, Mr. Ryan knew of Plaintiff's concerns; rather, Plaintiff states that he did not tell Mr. Ryan of the incidents. Therefore, the undisputed facts demonstrate that Plaintiff's employer could not have terminated Plaintiff's employment in retaliation because

the employer was unaware of any of his concerns.  As such, Plaintiff's retaliation claim must fail and the Court will grant summary judgment to Defendant as to Plaintiff's retaliation claim.

**III.    CONCLUSION**

For the reasons above, the Court will grant Defendant's motion for summary judgment will be GRANTED, and the Court will order this case CLOSED.  An appropriate form of order accompanies this opinion.

Dated: April 26, 2010

_____/s/ Garrett E. Brown, Jr._____
GARRETT E. BROWN, JR., U.S.D.J.